# Illinois Official Reports

## Appellate Court

***People v. Gonzalez*, 2015 IL App (1st) 132452**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL GONZALEZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-2452 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-MC1-186853; the Hon. Thomas J. Byrne, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier and Linda Olthoff, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Bianca R. Pucci, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Simon and Justice Liu concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a joint bench trial with three codefendants,[1] defendant Samuel Gonzalez was found guilty of reckless conduct, a Class A misdemeanor, and sentenced to 120 days in the Cook County department of corrections. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the police officer's testimony that he and codefendants threw bricks was contradicted and unbelievable. Defendant also contends that he was denied a fair trial because the trial court relied on testimony of endangerment that was not admitted to support its guilty finding. We reverse defendant's conviction.

¶ 2        In the original complaint, defendant was charged with reckless conduct based on his act of holding a brick and glass bottle in his hand while yelling gang slogans to passing vehicles and pedestrians. Prior to trial, the State amended the complaint to allege that defendant performed reckless actions that endangered the safety of another by "throwing bricks while yelling gang slogans to passing vehicles."

¶ 3        All four defendants were represented by the same defense counsel. Throughout the trial, the questions posed and the answers given were phrased in collective references to "the defendants," "they" and "them." The State and the defendant did not specifically elicit testimony directed at defendants individually or defendant Gonzalez in particular.

¶ 4        At trial, Chicago police officer Matthew Hoyas testified that at about 10:15 p.m. on April 5, 2013, he and his partner, Officer Romero Martinez, drove an unmarked police vehicle to the vicinity of 3113 West Wabansia Avenue in response to several calls received by police. As he drove westbound on Wabansia Avenue, Officer Hoyas saw a group of 10 men, including "the defendants," standing in the middle of the street two blocks away[2] at the intersection of Wabansia and Albany Avenues. From this distance, Officer Hoyas observed that all of the men in the group were holding bricks and throwing bricks and bottles into the street at passing vehicles while yelling gang slogans. When he was 10 to 15 feet away from the group, Officer Hoyas saw the men throw bricks at two passing cars that were being driven northbound on Albany Avenue, about 3 to 5 feet from the group. He did not see any bricks hit either car, but saw the bricks land "within feet" of the cars. Officer Hoyas also observed three pedestrians walking westbound on Wabansia Avenue, and when they were about 10 feet from the corner of Albany Avenue where the group of men were throwing bricks, they turned around and walked away heading eastbound.

¶ 5        Officers Hoyas and Martinez drove to within five feet of the group, exited their vehicle, approached the men, who were all holding bricks, and told them to come to the vehicle. All of the men dropped their bricks to the ground, "the defendants" approached the police vehicle,

_____

[1]We reversed codefendant Pedro Rosario's conviction. See *People v. Rosario*, 2015 IL App (1st) 132451-U. Codefendants Luis Vasquez and George Tapia are not parties to this appeal.

[2]We take judicial notice that a Chicago city block measures either 330 feet or 660 feet, depending on whether it is being measured from north to south or east to west. Alice Maggio, *Measuring a Chicago Mile*, Gapers Block (Oct. 2, 2003), www.gapersblock.com/airbags/archives/ measuring_a_chicago_mile/. Because the officers were traveling westbound, each block would measure 660 feet.

and the other six men fled. Officer Hoyas observed numerous bricks on the ground, in the middle of the street, and on the sidewalk. "The defendants" were then taken into custody. At the police station, defendants told the officers that they were out there "so deep" because the Folks posted on Facebook that they were coming to retaliate. Officer Hoyas acknowledged that the police report of the incident did not include a specific statement that defendants were throwing bricks but, rather, that they were in the street with rocks, bricks and bottles.

¶ 6    Officer Hoyas further acknowledged that he knew "the defendants" from having prior contact with them, and had previously told them to stay away from that area. Defense counsel then asked, "[D]id you actually see the four throw a brick at a car?" and Officer Hoyas replied "No, I didn't." Thereafter, Officer Hoyas testified that he saw "the defendants" throwing bricks when he was approximately two blocks away from them and that he could see their faces from that distance at night.

¶ 7    Chicago police officer Romero Martinez testified substantially the same as Officer Hoyas regarding their response to the call about a gang disturbance, and his observation of a group of 10 men standing in the middle of the street holding bricks. He further testified that the area was well lit and that he saw the men flashing gang signs and yelling gang slogans at one vehicle going northbound on Albany Avenue. Officer Martinez also saw three or four pedestrians walking westbound on Wabansia Avenue toward the group of men and saw them turn around and walk eastbound when they were 10 to 15 feet away from the men.

¶ 8    Officer Martinez further testified that as he and Officer Hoyas approached the group, all of the men dropped their bricks to the ground, and "the defendants" came to the police car while the other six men ran inside a building around the corner. Defendant told the officers they were out there because the Folks posted on Facebook that they were coming to the neighborhood to retaliate. Officer Martinez did not see anyone throw any bricks, nor did he see any bricks strike the passing car. He acknowledged that he did not see anyone holding bottles, but he wrote in his police report that they were holding bottles because there were several bottles on the ground and defendants were standing near them. He also saw numerous bricks in the street in addition to the bricks the men were holding.

¶ 9    The trial court summarized the evidence, specifically noting that Officer Hoyas saw the men throwing bricks, but that Officer Martinez saw them holding the bricks. The court found that the men were "yelling in the middle of the street where pedestrians were and changed directions based on–from the court's finding of the facts based on the conduct they observed." The court pointed out that the people inside the cars did not come forward to describe whether or not they felt endangered, but it found that it was reasonable to presume that they were trying to get away from the area where the defendants were standing in the street with bricks. The trial court found defendant guilty of reckless conduct and sentenced him to 120 days in the Cook County department of corrections.

¶ 10    The trial court denied defendant's motion for a new trial finding, based on the "credible evidence" presented at trial, the State proved defendant guilty beyond a reasonable doubt. The court found that the defendants were acting in concert with one another, and thus, the actions of one of the individuals in the group could be attributed to each of them. The court also stated "[t]hose pedestrians reacted to the danger they saw and the reason they reacted was for their own safety. They changed directions to get away from the brick-throwing defendants."

¶ 11    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because Officer Hoyas' testimony that he saw him throwing bricks was contradicted and

unbelievable. Defendant argues that Officer Hoyas' testimony was contradicted by Officer Martinez's testimony that he did not see anyone throw bricks and that he saw only one car drive down the street, not two. Defendant also notes that on cross-examination, Officer Hoyas testified that he did not actually see defendant throw a brick at a car. Defendant further claims that it is unbelievable that Officer Hoyas could see the men throwing bricks and the cars approaching the intersection from two blocks away at 10:15 p.m. Defendant asserts that the evidence only showed that he and the others were holding bricks in their hands, and there was no evidence that any bricks were thrown so as to endanger the safety of another person.

¶ 12    The State responds that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt because Officer Hoyas credibly testified that he saw defendant and codefendants throwing bricks, his testimony was corroborated by Officer Martinez, and any minor inconsistencies in their testimony were of no import. In addition, the State asserts that there was ample evidence that defendant was guilty based on a theory of accountability because he acted in concert with codefendants and the other six men in the group. Defendant replies that accountability is not at issue in this appeal because the evidence failed to show that any of the men threw bricks at the passing cars.

¶ 13    When defendant claims that the evidence is insufficient to sustain his conviction, this court must determine whether any rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proved beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State." *Baskerville*, 2012 IL 111056, ¶ 31.

¶ 14    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), nor simply because defendant claims that a witness was not credible or that the evidence was contradictory (*Siguenza-Brito*, 235 Ill. 2d at 228).

¶ 15    To prove defendant guilty of reckless conduct, the State was required to show that he recklessly performed an act that endangered the safety of another person. 720 ILCS 5/12-5(a)(1) (West 2012). The misdemeanor complaint in this case reads that defendant committed the offense of reckless conduct when he "performed reckless actions that endangered the safety of another, to wit that [defendant] was throwing bricks while yelling gang slogans to passing vehicles."

¶ 16    A defendant is legally accountable for the conduct of another when, either before or during the offense, and with the intent to promote or facilitate the commission of the offense, he solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense. 720 ILCS 5/5-2(c) (West 2012). "A defendant's mere presence at the scene of the crime is insufficient to prove accountability, even if the individual has knowledge that a crime is being committed or flees from the scene ***." *People v. Velez*, 388 Ill. App. 3d 493, 512 (2009).

¶ 17        We find that the evidence in this case was insufficient to prove defendant guilty of reckless conduct beyond a reasonable doubt. We note that, where multiple defendants are tried simultaneously, the prosecution is not relieved of its burden of making a record that clearly establishes the alleged offending conduct of each individual defendant is proven beyond a reasonable doubt. Here, Officer Hoyas was the only witness who testified that he saw "the defendants" throwing bricks, however, he also unequivocally testified the he did not see any of "the defendants," including this defendant, throw any bricks. The State's questioning of Officer Hoyas consisted of asking about "the defendants['] " actions as a group, without distinguishing between defendant and any of his codefendants or between defendant and any of the six men who walked away from the scene. In fact, much of the testimony referred to the actions of the entire group of 10 men without distinguishing between the 4 defendants and the other 6 men. At no point did the State elicit any testimony from Officers Hoyas or Martinez about defendant's individual actions or involvement in the crime.

¶ 18        Significantly, on cross-examination when explicitly asked by defense counsel "[D]id you actually see the four throw a brick at a car?" Officer Hoyas replied "No, I didn't." Thereafter, when the prosecutor asked whether he saw "the defendants" throwing bricks, Officer Hoyas gave a vague response that, "[w]e were approximately two blocks away." Defense counsel then asked Officer Hoyas if he could tell, from that distance, who was throwing the bricks, and the officer replied "[t]he defendants." Upon further questioning, Officer Hoyas said that he also saw the other six men throwing bricks. We find that, from the inconsistency and vagueness of his testimony, it is unclear whether Officer Hoyas ever saw any one of "the defendants," and specifically defendant, throwing bricks. His testimony is even more doubtful when considered in conjunction with Officer Martinez's testimony that he did not see anyone throwing any bricks.

¶ 19        Furthermore, defendant argues, not only did the State fail to prove that he threw any bricks, the State failed to prove his actions endangered the safety of another person. 720 ILCS 5/12-5(a)(1) (West 2012). The State claims endangerment was proven beyond a reasonable doubt and although Officer Hoyas' testimony was inconsistent, he did say that he saw "the defendants" as well as six other people in a group, all throwing bricks that landed "within feet" of passing cars. In addition, the State argues that, as the trial court found, endangerment can be implied because the group of pedestrians walking down the street "changed directions to get away from the brick-throwing defendants."

¶ 20        Our review of the record shows that the State failed to present any evidence that anyone's safety was endangered as a result of "the defendants['] " alleged actions. One officer, from two blocks away, saw "the defendants" throwing bricks. Despite the fact that it was 10:15 p.m. in April, he could see where the bricks landed and they were within feet of the cars that passed. Even if we were to accept Officer Hoyas' initial testimony as true, as we presume the trial court did, it does not satisfactorily follow that the bricks thrown endangered anyone's safety. The officers testified that they did not receive any complaints of personal or property damage. There was no testimony that the bricks struck any cars or pedestrians or that they were directed at any person.

¶ 21        Although the trial court found endangerment, based on an inference that the occupants of the cars felt endangered, the court did so without any evidence that the occupants of any car were even aware of what was occurring. Without testimony affirmatively showing that any

cars were struck by any object, including a brick, we cannot reasonably infer any reaction of any occupant.

¶ 22   Furthermore, no one from the group of pedestrians walking down the street testified that they chose to change course when they encountered "the defendants" or that they believed their safety was endangered. There was no testimony that supports a factual conclusion that any object was throw in the direction of a pedestrian. While the trial court found that the group of pedestrians were concerned for their "safety" and "changed directions to get away from the brick-throwing defendants," it was equally reasonable to infer, based on the testimony, that the pedestrians might have been the rival gang that threatened retaliation and decided to retreat to avoid arrest when they saw the police arrive rather than changing direction out of concerns for their safety. A finding that these pedestrians were endangered is mere speculation and not supported by the evidence.

¶ 23   We are mindful that it was the trial court's duty to determine the credibility of the witnesses and that it is not our function to retry defendant on appeal. *Siguenza-Brito*, 235 Ill. 2d at 228. Nonetheless, it is well settled that testimony may be found insufficient where the evidence compels the conclusion that no reasonable person could accept that testimony beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Further, "the fact a judge or jury did accept testimony does not guarantee it was reasonable to do so." *Id*. While we usually defer to the trial judge's resolution of conflicting evidence where, as is the case here, the conflict is created by the same witness, we cannot defer and accept one definite statement of a witness about an important issue and completely ignore the exact opposite definitive statement on that same issue by the same witness. Thus, Officer Hoyas' testimony that he observed "the defendants" throwing bricks, simply does not warrant our acceptance and deference when he unequivocally stated he did not see "any defendant" throw any bricks. In light of the inconsistent and vague nature of Officer Hoyas' testimony, including his conclusive statement on cross-examination that he did not see "the defendants" throw any bricks, when combined with the remaining officer's testimony that he did not see the defendant throw any bricks, we find the testimony is so unsatisfactory that the State failed to prove the elements of reckless conduct beyond a reasonable doubt.

¶ 24   In addition, we reject the State's assertion that defendant could be found guilty based on a theory of accountability. The testimony from Officers Hoyas and Martinez established that a group of 10 men were standing in the street, that all of the men were holding bricks and yelling gang slogans, and that they all dropped those bricks as police approached. Officer Martinez, however, expressly testified that he did not see any of the men throwing bricks, and, as discussed above, Officer Hoyas' testimony that, from two blocks away, he saw "the defendants" throwing bricks was inconsistent and vague and completely negated when he testified that he did not "see the four throw a brick at a car." It therefore follows that, because the evidence failed to establish that any of the men were throwing bricks we cannot reasonably determine what conduct defendant should be accountable for, the theory of accountability has not been established through satisfactory evidence.

¶ 25   After carefully considering the entire record before us, we find the State failed to prove beyond a reasonable doubt that defendant threw a brick or that his actions resulted in bodily harm or endangerment. We also find the State failed to prove that defendant engaged in any conduct to support a finding that defendant is legally accountable for conduct that endangered the safety of another.

¶ 26    Accordingly, we must reverse defendant's conviction.

¶ 27    Reversed.