2021 IL App (1st) 192266-U

No. 1-19-2266

Order filed March 18, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18MC4004727 |
| | ) | |
| RAFAEL AVILES, | ) | The Honorable |
| | ) | Celestia L. Mays, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction for misdemeanor reckless conduct is affirmed over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2     Following a bench trial, defendant, Rafael Aviles, was convicted of one count of misdemeanor reckless conduct for physically striking Elmisael Rosado while police officers attempted to separate the two men. After considering factors in aggravation and mitigation, the trial court sentenced defendant to a six-month term of court supervision. On appeal, defendant

argues that his conviction should be reversed because the State's evidence was not sufficient to prove him guilty beyond a reasonable doubt. For the following reasons, we affirm defendant's conviction.

¶ 3                                    BACKGROUND

¶ 4        On December 20, 2018, defendant was charged with one count of misdemeanor reckless conduct. The complaint alleged that, on December 14, 2018, defendant, while "highly intoxicate[d]," physically struck Rosado in the face numerous times at a gas station in Cicero, Illinois. The complaint further alleged that, after police officers attempted to separate defendant from Rosado, defendant continued to attack him, putting others in jeopardy of receiving physical contact and bodily harm. Defendant waived his right to a jury trial, and a bench trial took place on April 25, 2019.

¶ 5        At trial, the State called two witnesses: police officers Andrew Marquez and Porfirio Jimenez of the Cicero Police Department. Officer Marquez testified that he has been a police officer at the Cicero Police Department for five years and that he was previously a police officer at the Maywood Police Department for seven years. On December 14, 2018, he was on patrol with his partner, Officer Jimenez, when they received a call on the radio that there was a fight taking place at a gas station. When they arrived at the gas station, Officer Marquez observed defendant attempting to fight Rosado[1] while Cicero police sergeant Godinez[2] was between the two men attempting to separate them. Officer Marquez then observed defendant "jump over [Sergeant Godinez] and strike [Rosado] in the face with a closed fist." Officer

---

[1] In their testimonies, neither Officer Marquez nor Officer Jimenez stated the name of the man that defendant was fighting; however, the complaint and the police report identify him as Elmisael Rosado.

[2] Sergeant Godinez's first name does not appear in the record on appeal.

Marquez then immediately detained defendant while his partner detained Rosado, and Officer Marquez observed that defendant appeared "highly intoxicated." Defendant continued to scream at Rosado with threats to strike and beat him, and Officer Marquez then took defendant into custody.

¶ 6    On cross-examination, Officer Marquez testified that he did not know who started the fight, why they were fighting, or whether defendant was acting in self-defense. Officer Marquez explained that defendant is approximately 6'4" and has a longer reach than Sergeant Godinez, who is approximately 5'3", and that he observed defendant "actually jumping over [Sergeant Godinez's] back to reach towards [Rosado]." When asked whether defendant jumped over Sergeant Godinez or instead went around him, Office Marquez testified that defendant was "jumping over" the sergeant to reach Rosado. Officer Marquez clarified that defendant and Rosado were only fighting with each other and that he did not observe them fight with anyone else.

¶ 7    On redirect examination, Officer Marquez testified that, as he approached defendant, he ordered defendant to stop fighting, but defendant did not comply and continued to fight with Rosado.

¶ 8    The State's second witness, Officer Jimenez, testified that he has been a police officer at the Cicero Police Department for nearly five years and that he was previously a police officer at the Harvey Police Department for 18 months. On December 14, 2018, he was on duty with his partner, Officer Marquez, when they responded to a radio call of a disturbance at a gas station. Once they arrived at the gas station, Officer Jimenez observed Sergeant Godinez attempting to separate defendant and Rosado. As Officer Jimenez exited his vehicle to help Sergeant Godinez, he observed the men "get around" the sergeant to physically fight each

3

other, and he observed defendant strike Rosado. Officer Jimenez and his partner then rushed into the gas station, separated the two men, and placed them both in handcuffs. Officer Jimenez testified that, while approaching defendant, both he and his partner ordered defendant to stop fighting. After being separated and placed in handcuffs, both men continued to yell obscenities and threaten each other.

¶ 9     On cross-examination, Officer Jimenez testified that both defendant and Rosado "went around" Sergeant Godinez by circling around him to fight each other, but he did not observe defendant "jump over" the sergeant. Defendant and Rosado were unable to strike each other after they were placed in handcuffs. Officer Jimenez testified that he did not know who started the fight or whether defendant was acting in self-defense. He observed several other people at the gas station, but they were not involved in the physical fighting between defendant and Rosado, and no one else's safety was threatened. Defendant was not combative with the police officers after he was placed in handcuffs, but Rosado was taken to the hospital for evaluation because he was "highly intoxicated" and became combative.

¶ 10    On redirect examination, Officer Jimenez testified that, when he arrived at the gas station, he observed defendant and Rosado yelling at each other with Sergeant Godinez in between them, and that both men "went around" the sergeant and started physically fighting. Officer Jimenez testified that Sergeant Godinez did not move out of the way as he attempted to separate the two men and that the sergeant "was certainly within reach of getting struck" since the men were swinging at each other. Officer Jimenez and his partner ordered both defendant and Rosado to stop fighting, but they did not comply, so Officer Jimenez and his partner pulled the two men away from each other. Officer Jimenez testified that he could not recall whether defendant or Rosado swung at each other over Sergeant Godinez's head.

¶ 11        On recross examination, Officer Jimenez testified that he did not indicate in the police report that he prepared whether Sergeant Godinez was in fear of his life or about to be struck by defendant, and that his police report indicated only that the sergeant attempted to separate defendant and Rosado.

¶ 12        After Officer Jimenez's testimony, the State rested, and the defense moved for a directed finding, arguing that the State failed to prove defendant guilty beyond a reasonable doubt, even when viewing the evidence in the light most favorable to the State. The defense argued that the State did not meet its burden of proof because Officers Marquez and Jimenez both testified that they did not know why the two men were fighting or whether defendant was acting in self-defense. The defense further argued that the officers were inconsistent in their testimonies since Officer Marquez testified that defendant jumped over Sergeant Godinez, while Officer Jimenez testified that defendant went around the sergeant. The defense concluded that defendant was noncombative and cooperative after the police officers separated him from Rosado, and although defendant continued to yell obscenities at Rosado, defendant's actions did not amount to reckless conduct since there were no other people involved and no one was in fear for their life.

¶ 13        The State responded that both Officers Marquez and Jimenez testified that defendant and Rosado were fighting and striking one another, and that Sergeant Godinez was in danger of being struck as he was between the two men attempting to separate them. The State argued that, although defendant was claiming self-defense, the officers testified that defendant continued to fight despite ordering him to stop, and that he continued to fight even while the officers attempted to separate the two men. The State further argued that the altercation was a "heated scene" where "things happened very quickly," which would explain why the officers

were not exactly consistent on who threw which punch or what Officer Marquez meant when he testified that defendant jumped over Sergeant Godinez.

¶ 14     The trial court then denied the defense's motion for a directed finding. Defendant exercised his constitutional right not to testify at trial, and the defense rested without calling any witnesses to testify.

¶ 15     At closing arguments, the defense argued that the State failed to meet its burden of proof because the officers' descriptions of defendant's actions did not amount to reckless conduct. The defense argued that the officers' testimonies were not credible since the police report did not describe defendant as being combative or continuing to fight after the officers arrived at the gas station, and if defendant had truly been combative with the officers, then he would have been charged with resisting arrest rather than misdemeanor reckless conduct. The defense argued that whether Sergeant Godinez could have been struck was purely speculative, especially since the sergeant did not testify at trial. The defense further argued that the officers' testimonies were not credible because the police report did not state that the sergeant was in danger of being struck, and the officers' testimonies were inconsistent on the details of the fight. The defense also claimed that defendant was trying to defend himself from Rosado, who was combative with the police and had to be taken to the hospital because he was "highly intoxicated." The defense pointed out that both officers testified that they could not rule out the possibility that defendant was acting in self-defense since they did not know why the two men were fighting, and that defendant's actions of screaming obscenities did not amount to reckless conduct.

¶ 16     The State responded that a conviction for reckless conduct only requires proof that defendant committed a reckless act, and that the testimonies of Officers Marquez and Jimenez

proved defendant committed a reckless act since they both testified that defendant was fighting and striking Rosado while Sergeant Godinez was in between them. The State argued that who started the fight or whether defendant was acting in self-defense was irrelevant since the statute only requires proof of a reckless act. The State argued that the officers testified that defendant did more than just yell obscenities at Rosado since they both testified that they observed defendant throwing and landing punches, even after being told to stop and while the sergeant was between defendant and Rosado attempting to break up the fight. The State concluded that the officers' testimonies were consistent, and that one would not be able to recollect or say exactly what each individual did during a fight. The State also claimed that the police report was a summary highlighting the most relevant events of the altercation, which were that defendant still continued to fight even after the police officers ordered him to stop, and he refused to stop when Officer Godinez attempted to separate him and Rosado and again refused to stop fighting when he was told to do so by Officers Marquez and Jimenez.

¶ 17    After hearing closing arguments, the trial court found defendant guilty of one count of misdemeanor reckless conduct. The trial court stated that it found the testimonies of Officers Marquez and Jimenez credible, explaining that "one said [defendant] jumped over the Sergeant, the other said he went around the Sergeant, but with all that's going on, it is not unusual that one might say 'jumped over,' the other might say 'go around.' " The trial court noted that, regardless of the reason why defendant punched Rosado, the statute states that reckless conduct is where a person " 'by any means lawful or unlawful' " causes bodily harm or endangerment to the safety of another. The trial court concluded that, since both officers testified that they observed defendant punch Rosado, the State had met its burden of proving defendant guilty of reckless conduct as charged.

7

¶ 18        On May 23, 2019, the defense filed a motion for a new trial, arguing that Officer Jimenez's testimony was not credible because he was effectively impeached by omission since he did not mention in his police report that Sergeant Godinez was in fear of being struck. The defense argued that the State failed to prove beyond a reasonable doubt that defendant's actions endangered the safety of another person because the possibility of Sergeant Godinez being struck was not mentioned in either the complaint or the police report. The defense claimed that, if defendant's actions constituted reckless conduct, then "whenever a police officer separates two individuals who were engaged in a fight, they can be charged with reckless conduct for yelling obscenities at one another." The defense further argued that it was reversible error to allow the officers to testify that defendant was "highly intoxicated" since they did not explain how they arrived at that conclusion.

¶ 19        The State filed a response to the defense's motion for a new trial on June 7, 2019, arguing that the trial court properly found Officer Jimenez's testimony to be credible since his testimony was not inconsistent with what he wrote in his police report. The State argued that it proved beyond a reasonable doubt that defendant endangered the safety of another person because the officers credibly testified that defendant struck Rosado in the face with a closed fist while they were fighting. The State further argued that defendant's conduct went beyond merely yelling obscenities at Rosado since the officers both testified that they observed defendant strike Rosado despite being ordered to stop and while Sergeant Godinez was standing between them. The State further argued that it was reasonable for the trial court to allow the officers' testimonies that defendant was "highly intoxicated" given the officers' combined training and experience, and they were merely testifying to what they observed.

¶ 20    On September 5, 2019, the trial court denied the defense's motion for a new trial; however, a transcript of the proceedings does not appear in the record on appeal.

¶ 21    At the sentencing hearing on October 3, 2019, the defense requested that defendant receive a sentence of three months' court supervision. After considering factors in aggravation and mitigation, the trial court sentenced defendant to a six-month term of court supervision, only three months more than what counsel for defendant suggested. Defendant now appeals his conviction.

¶ 22                                ANALYSIS

¶ 23    On appeal, defendant argues that his conviction should be reversed, claiming that the State failed to prove him guilty of reckless conduct beyond a reasonable doubt. Specifically, defendant argues that the State did not prove that he recklessly performed an act that caused harm to or endangered the safety of another person. The State argues that it met its burden since Officers Marquez and Jimenez both credibly and consistently testified that defendant continually attempted to strike Rosado as Sergeant Godinez attempted to physically separate the two, endangering the sergeant's personal safety as a result and the safety of Rosado. For the following reasons, we affirm defendant's conviction.

¶ 24    "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt." *People v. Newton*, 2018 IL 122958, ¶ 24. A conviction will not be reversed "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Newton*, 2018 IL 122958, ¶ 24. The reviewing court will not retry the defendant. *Newton*, 2018 IL 122958, ¶ 24. Nor will a reviewing court "substitute its judgment for that of

the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." (Internal quotation marks omitted.) *People v. Hardman*, 2017 IL 121453, ¶ 37.

¶ 25  Where a guilty finding depends on eyewitness testimony, a reviewing court, keeping in mind that it was the trier of fact who observed and heard the witnesses, must decide whether any trier of fact could reasonably accept the witnesses' testimony as true beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 279-80 (2004). It is for the trier of fact to determine how flaws in a witness's testimony affect the credibility of a witness as a whole. *Cunningham*, 212 Ill. 2d at 283. The function of the trier of fact is to assess the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence, and to resolve conflicts or inconsistencies in the evidence. *People v. Tenney*, 205 Ill. 2d 411, 428 (2002); *People v. Brooks*, 187 Ill. 2d 91, 131 (1999).

¶ 26  "A person commits reckless conduct when he or she, by any means lawful or unlawful, recklessly performs an act or acts that: *** cause bodily harm to or endanger the safety of another person ***." 720 ILCS 5/12-5(a)(1) (West 2018). "A person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2018).

¶ 27  The evidence presented at trial was sufficient for a rational trier of fact to find defendant guilty of reckless conduct beyond a reasonable doubt. Both Officers Marquez and Jimenez testified that they responded to a call of a disturbance at a gas station, and that, when they arrived, they observed defendant punching Rosado in the face with his closed fists while Sergeant Godinez was between the two men attempting to separate them. Both officers testified

that they ordered defendant to stop fighting but he did not comply, and that defendant either jumped over or moved around the sergeant to strike Rosado. Although none of the officers were ultimately injured, Officer Jimenez testified that all three officers were in danger of being struck by defendant. Moreover, both Officers Marquez and Jimenez testified that defendant did in fact punch Rosado while they were fighting.

¶ 28 Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the officers' testimonies demonstrated that defendant recklessly performed an act that caused bodily harm or endangered the safety of another person when he punched Rosado. Defendant further endangered the safety of Sergeant Godinez by attempting to punch Rosado while the sergeant was between the two men attempting to break up the fight. Defendant also endangered the safety of Officers Marquez and Jimenez as they were within striking distance of defendant's swings as the officers detained the two men. Defendant also consciously disregarded the substantial risk of harming others by continuing his attempts to punch Rosado even after being told by multiple police officers to stop and while the sergeant was standing between the two men attempting him to stop the fight, which is a gross deviation from the standard of care that a reasonable person would exercise in such a situation. As a result, we cannot say that the State's evidence was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt, and we affirm defendant's conviction.

¶ 29 Defendant presents several arguments as to why the State did not meet its burden. First, defendant claims that the complaint alleged that, "[a]fter numerous people and officers attempted to separate [defendant,] [defendant] continued to attempt to attack Rosado causing *more altercations* and putting others in jeopardy of receiving physical contact and bodily

11

harm." (Emphasis added.) Defendant argues that, since the complaint alleged that defendant caused "more altercations" that put others at risk of harm, the State was required to prove that defendant caused additional altercations, and that there was no evidence of that at trial.

¶ 30 However, whether or not defendant caused "more altercations" is not an element of reckless conduct under the statute. As stated, a finding of reckless conduct requires proof that defendant recklessly performed an act that caused bodily harm to or endangered the safety of another person. 720 ILCS 5/12-5(a)(1) (West 2018). The State presented ample evidence of this at trial when Officers Marquez and Jimenez both testified that defendant, after being ordered to stop, continued to fight with Rosado while punching him in the face as Sergeant Godinez stood between them attempting to stop the fight. As a result, a rational trier of fact could have found that the evidence presented by the State was sufficient to meet its burden that defendant recklessly performed an act that caused bodily harm to Rosado and endangered the safety of the sergeant standing between them, and the State did not need to present additional evidence that defendant caused "more altercations." In fact, defendant continued to swing punches at Rosado as the two officers were separating the combatants.

¶ 31 Defendant next argues that the State did not meet its burden because "no bystanders were put at risk of harm" by his conduct. In support, defendant refers to Officer Marquez's testimony that he observed defendant fighting with Rosado, but they were not fighting with "anybody else." Defendant also points to Officer Jimenez's testimony that, although there were several other people present in the gas station, defendant and Rosado were fighting only with each other and that nobody else was involved. Defendant concludes that these statements show that he did not put any bystanders at risk of harm.

¶ 32    Although the testimony at trial indicated that no additional bystanders were engaged in a physical fight with defendant, the State presented sufficient evidence for a rational trier of fact to find that defendant endangered the safety of at least four people: Rosado, Sergeant Godinez, and Officers Marquez and Jimenez. Both Officers Marquez and Jimenez testified that they observed defendant punching Rosado and that defendant punched him in the face, and both testified that Sergeant Godinez was standing in between the two men attempting to stop the fight as defendant continued swinging at Rosado. Officer Jimenez further testified that all three police officers were within striking distance of defendant's swings as he and his partner intervened to stop the fight. Since the State presented evidence sufficient for a rational trier of fact to find that defendant endangered the safety of Rosado and the three police officers, it met its burden of proving defendant guilty of reckless conduct, and the State did not need to present additional evidence that defendant endangered other bystanders to support a conviction.

¶ 33    Defendant further claims that none of the police officers were at risk of being harmed and that the officers' testimonies were not persuasive. Defendant argues that both Officers Marquez and Jimenez testified that they immediately intervened to stop the fight and placed both men in handcuffs, and that Officer Marquez never testified whether any of the officers were at risk of being struck by defendant. Defendant further argues that whether he placed the police officers in danger was "mere speculation" since Officers Marquez and Jimenez did not testify as to the "nature, speed, frequency, or proximity" of defendant's punches, and Sergeant Godinez did not testify at all. Defendant also points to Officer Jimenez's testimony on cross-examination where he was asked whether anyone's safety was threatened, and he answered, "No." Defendant claims that Officer Jimenez then changed his story on redirect examination when he testified that all three police officers were at risk of being struck by defendant, even

though he could not recall where the sergeant was standing or where defendant's fists were swinging. Defendant concludes that Officer Jimenez's testimony was unpersuasive since he did not mention in his initial testimony that the police officers were at risk of being struck by defendant and he admitted that he did not include this information in his police report.

¶ 34    As we have already stated, the evidence presented at trial was sufficient to for a rational trier of fact to find defendant guilty of reckless conduct as both Officers Marquez and Jimenez testified that they observed defendant punch Rosado and continue to fight him while Sergeant Godinez was standing between the men attempting to stop the fight. Although Officer Marquez did not explicitly say whether the police officers were at risk of being struck, a rational trier of fact could find that his testimony showed that defendant endangered Sergeant Godinez since Officer Marquez observed defendant, who was a foot taller than the sergeant, jump over the sergeant to strike Rosado. A reasonable inference could be drawn from this testimony that defendant's actions placed the sergeant at risk of bodily harm. This evidence alone was sufficient to prove defendant guilty of reckless conduct without additional testimony from Sergeant Godinez.

¶ 35    Furthermore, defendant presents Officer Jimenez's testimony that no one's safety was threatened out of context. On cross-examination, the defense asked Officer Jimenez whether there were any other people involved in the alternation, and he responded that there were several people in the gas station but clarified that no one was fighting other than defendant and Rosado. The defense then asked whether anyone else's safety was threatened, and Officer Jimenez answered, "No." In the context of the line of questioning, Officer Jimenez's negative answer to the latter question concerned the safety of bystanders in the gas station since the immediately preceding questions concerned whether defendant was fighting anyone other than

Rosado. Afterwards, the State asked Officer Jimenez on redirect examination specifically whether Sergeant Godinez was at risk of being struck, and he testified that the sergeant "was definitely within reach of getting struck" by both men, and he elaborated that both men were swinging as the sergeant attempted to separate the two men and that "we were all in risk of getting struck ourselves." Viewing Officer Jimenez's testimony in the light most favorable to the State, we cannot say that his testimony was inconsistent as he first responded to questions concerning the safety of bystanders and later responded to questions concerning the safety of the police officers. Although Officer Jimenez did not explicitly state in his police report that the police officers were at risk of being struck by defendant, both his report and testimony consistently described defendant attempting to strike Rosado as the sergeant attempted to separate them, from which a rational trier of fact could find that defendant's actions placed the sergeant at risk of being struck.

¶ 36    Additionally, we cannot say that the trial court erred when it found Officer Jimenez's testimony credible even though he could not recall the exact details of the fight because it happened so fast. As stated, it is for the trier of fact to determine how flaws in a witness's testimony affect the credibility of a witness as a whole. *Cunningham*, 212 Ill. 2d at 283. The trial court found Officer Jimenez's testimony to be consistent and credible despite his inability to describe the precise blow-by-blow details of the fight. Given that the alleged flaws in Officer Jimenez's testimony involve only minor details of the fight, we cannot say that no trier of fact could reasonably accept his testimony as true beyond a reasonable doubt, and we will not substitute our judgment for that of the trial court on the question of credibility.

¶ 37    Defendant compares this case to *People v. Gonzalez*, 2015 IL App (1st) 132452. In *Gonzalez*, the defendant was charged with reckless conduct for allegedly throwing bricks while

15

yelling gang slogans at passing vehicles. *Gonzalez*, 2015 IL App (1st) 132452, ¶ 2. At trial, a police officer testified on cross-examination that he did not actually observe the defendant or his three co-defendants throw a brick at a vehicle. *Gonzalez*, 2015 IL App (1st) 132452, ¶ 18. Then on redirect examination, the State asked the police officer whether he observed "the defendants throwing bricks," and he testified vaguely, "We were approximately two blocks away." *Gonzalez*, 2015 IL App (1st) 132452, ¶ 18. Later on recross examination, the defense asked the police officer if he could tell, given the distance between him and the defendants, who was throwing the bricks, and the officer replied that it was "[t]he defendants." *Gonzalez*, 2015 IL App (1st) 132452, ¶ 18. This court reversed the defendant's conviction on appeal, finding that the State had failed to show that he had thrown a brick or that his actions resulted in bodily harm or endangerment of others. *Gonzalez*, 2015 IL App (1st) 132452, ¶ 25. This court noted that, although the trial court found endangerment based on an inference that the occupants of the passing vehicles felt endangered, there was not sufficient evidence to support that conclusion. *Gonzalez*, 2015 IL App (1st) 132452, ¶ 21. This court stated that, "[w]ithout testimony affirmatively showing that any cars were struck by any object, including a brick, we cannot reasonably infer any reaction of any occupant." *Gonzalez*, 2015 IL App (1st) 132452, ¶ 21.

¶ 38     In the instant case, defendant argues that the evidence here is likewise insufficient to prove him guilty of reckless conduct because the officers' testimonies were not credible. Defendant claims that, "[j]ust like the officer in *Gonzalez*, whose vague answer that 'the defendants' were throwing bricks was insufficient to prove *Gonzalez* was committing a reckless act, [Officer Jimenez's] testimony that '[they] were all at risk' similarly fails to prove that [defendant] engaged in an act that endangered the officers."

¶ 39    *Gonzalez* is factually distinguishable from the case at bar. In *Gonzalez,* one officer testified inconsistently concerning whether he observed the defendants as a group throwing bricks, and another officer testified that he did not observe anyone throwing bricks. *Gonzalez,* 2015 IL App (1st) 132452, ¶ 18. In reversing the defendant's conviction, this court found that "[a]t no point did the State elicit any testimony from [the officers] about defendant's individual actions or involvement in the crime." *Gonzalez,* 2015 IL App (1st) 132452, ¶ 17. This court further noted that, even if the police officers had testified that they observed the defendant throwing bricks, there was no evidence presented at trial that anyone was endangered due to the fact that both officers testified that they did not receive any complaints of personal or property damage and that there was no testimony that the bricks struck any vehicles or that the thrown bricks were directed at anyone. *Gonzalez,* 2015 IL App (1st) 132452, ¶ 20.

¶ 40    In contrast, the officers' testimonies in the instant case described defendant's individual actions and involvement in the fight, as well as the risk of harm defendant posed to others. Here, both Officers Marquez and Jimenez testified that they actually observed defendant punch Rosado and that he continued to swing at him while Sergeant Godinez was between the two men attempting to stop the fight. Also, Officer Jimenez testified that Sergeant Godinez, as well as Officer Marquez and himself, were all at risk of being struck by defendant. As a result, we find that *Gonzalez* is not instructive in this case.

¶ 41    Defendant additionally argues that the State did not prove beyond a reasonable doubt that his conduct placed the police officers at a risk of harm contemplated by the reckless conduct statute. Defendant argues that the statute was originally enacted to address "the reckless homicide type of conduct where no homicide results," citing *People v. Peters,* 180 Ill. App. 3d 850, 853 (1989). Defendant claims that his conduct was nowhere close to the kind of conduct

17

that would cause a reckless homicide, and that the only acts that he was said to have committed were taking swings at Rosado and punching him in the face.

¶ 42     We do not find defendant's argument persuasive because, although the appellate court in *Peters* noted the Committee Comments stated that the reckless conduct statute was " 'aimed primarily at the reckless homicide type of conduct where no homicide results' " (*Peters*, 180 Ill. App. 3d at 853 (quoting Ill.Ann.Stat., ch. 38, par. 12-5(a), Committee Comments, at 573 (Smith-Hurd 1979)), the *Peters* court explained in the next sentence that those comments "do not limit the scope of the statute to such conduct" (*Peters*, 180 Ill. App. 3d at 853 (citing *People v. Burton*, 100 Ill. App. 3d 1021, 1025 (1981))). As a result, the State was not required to prove that defendant's conduct rose to a reckless homicide type of conduct where no homicide results. See *People v. Lane*, 2017 IL App (1st) 151988, ¶ 17 (finding sufficient evidence to support a reckless conduct conviction where the defendant unintentionally stuck the victim in the face while fighting with her).

¶ 43     Finally, defendant argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that his actions were reckless as defined by the reckless conduct statute. Defendant claims that, although both officers testified that he punched Rosado, Officer Jimenez testified that both men were swinging at each other and that Rosado was taken to the hospital because he was "intoxicated" and combative. Defendant also points to both officers' testimonies that they did not know who started the fight. Defendant concludes that, based on the limited information in the officers' testimonies, there was insufficient evidence that defendant "was acting unjustifiably, or that his behavior was a gross deviation from what a reasonable person would do under the same circumstances."

¶ 44    We note, as did the trial court, that the reckless conduct statute provides that a person commits reckless conduct when he or she, "by any means lawful or unlawful," recklessly performs an act that causes bodily harm to or endangers the safety of another person. 720 ILCS 5/12-5(a)(1) (West 2018). The statute further defines a reckless action as when person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, *** and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2018). Here, Officers Marquez and Jimenez both testified that defendant continued his attempts to strike Rosado even though they ordered him to stop and despite Sergeant Godinez standing between the two men attempting to stop the fight. A rational trier of fact could find that defendant's conduct constituted a gross deviation from the standard of care that a reasonable person would exercise in that situation as a reasonable person would be expected to stop fighting after receiving orders from three police officers to stop, especially where a sergeant is physically positioning himself between the fighters in an attempt to stop the fight. As such, we cannot say that the State failed to prove defendant that defendant's actions rose to a level of reckless conduct as defined by the statute.

¶ 45                                    CONCLUSION

¶ 46    For the foregoing reasons, we cannot say that no rational trier of fact could find defendant guilty of reckless conduct beyond a reasonable doubt. As a result, we affirm defendant's conviction.

¶ 47    Affirmed.