2023 IL App (2d) 220114
No. 2-22-0114
Opinion filed August 25, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-336 |
| MARCUS CURRIE, | ) ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, the defendant, Marcus Currie, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and was sentenced to a total of 14 years' imprisonment. On appeal, the defendant argues that (1) he was not proven guilty beyond a reasonable doubt, (2) his trial counsel was ineffective for failing to object to the late disclosure of an expert opinion, (3) one of his convictions must be vacated for violating one-act, one-crime principles, and (4) his sentence violates the proportionate penalties provision of the Illinois Constitution. We reverse the defendant's conviction on one count, vacate his conviction on the other, and remand for additional proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      On May 8, 2019, the defendant was charged by indictment with five counts of predatory criminal sexual assault of a child (*id.*) and one count of sexual exploitation of a child (*id.* § 11-9.1(a)(2)). The charges alleged that the defendant's penis contacted the buttocks or sex organ of his niece, J.L., and his nephew. Counts I and VI pertained to defendant's nephew and were severed before trial. Counts II, III, and IV alleged contact between the defendant's penis and J.L.'s vagina. Count V alleged contact between the defendant's penis and J.L.'s buttocks. On August 16 and 17, 2021, the trial court conducted a jury trial on the counts pertaining to J.L.

¶ 4      At trial, J.L. testified that her birthday was August 6, 2013. The defendant was her uncle. She knew that people were not supposed to touch her on her chest or her "bottom," either where she "poop[ed]" or where she "pee[d].  She testified that something "uncomfortable" happened to her when she was about six years old. During the daytime, when her family was downstairs, the defendant told her to go into her brother's bedroom. The defendant stayed in her brother's bedroom when he lived with the family. She got on the bed. She was wearing pajamas while the defendant was wearing a black shirt and jeans. The defendant got on the bed with her. They did not get under the covers, and they both kept their clothes on. The defendant laid on top of her and touched her "bottom" with his "private" that he used to "[p]ee." The defendant was not moving his body, and she stayed still because she could not move. They did not talk to each other while they were in bed. The defendant did not touch any other parts of her body. After the incident, she told her sister and her sister told her parents. J.L. testified that there was no other time that "anything happened."

¶ 5      On cross-examination, J.L. recalled being sent to the school nurse for a mark on her face. She then went to the doctor and told the doctor that her father accidentally hit her because he was

upset that she and her sister were eating candy. She denied telling the doctor that the defendant had touched her.

¶ 6    Dr. Priscilla Sarmiento-Gupana, a pediatrician, testified that on January 17, 2019, she conducted a physical exam on J.L. The Illinois Department of Children and Family Services (DCFS) had requested an evaluation for the bruising caused by J.L.'s father. J.L. told her that her father got angry after finding her eating candy with her sister. He then accidentally hit her face with a belt. Dr. Sarmiento-Gupana's physical exam of J.L revealed bruises on her left cheek, inner corner eye, and left wrist. J.L.'s genital exam was normal.

¶ 7    Dr. Sarmiento-Gupana further testified that, without prompting, J.L. told her "something to the effect of I am not supposed to talk about it but [the defendant] touched me." Dr. Sarmiento-Gupana asked what happened, and J.L. said the defendant "put his private part in her private part and moved up and down and up and down." Dr. Sarmiento-Gupana later clarified that J.L.'s exact words were that "he touched *** her private with his private." She did not ask J.L. what she meant by "private." J.L. said it happened while she was sleeping in her bedroom. J.L. did not indicate whether she or the defendant were wearing clothes when the incident occurred.

¶ 8    Dr. Sarmiento-Gupana testified that, after J.L. made these statements, Laura Link, a DCFS caseworker, entered the exam room. After Dr. Sarmiento-Gupana asked J.L. to repeat what she had just said, J.L. did. When J.L.'s mother, C.F., entered the room, Dr. Sarmiento-Gupana informed her about J.L.'s disclosure.

¶ 9    C.F. testified that she had four children. In 2018 and 2019, she lived with her children, her now ex-husband Je.L., a stepdaughter, and a roommate. From February 5, 2018, until the summer of 2018, her brother—the defendant—lived with them. The defendant stayed alone in one of the

bedrooms. The defendant worked from 6 a.m. to 6 p.m. while he stayed there. C.F. worked similar hours. Je.L. did not work, and he took care of the children.

¶ 10    C.F. testified that there were a couple of times that the defendant watched the children while she ran an errand, but, other than that, he was never alone with the children. On one occasion, C.F. came home from work and opened the door to her son's bedroom and saw the defendant and the children on the bed. The defendant was on his phone, J.L. was by the wall, and another daughter was in the middle. C.F. asked what they were doing, and the defendant said they were not doing anything, they were "basically in there chilling."

¶ 11    C.F. testified that the first time she heard about the sexual abuse allegations was when the doctor told her what J.L. had disclosed.

¶ 12    Susan Salinas-Ramirez testified that she was a forensic interviewer at the Kane County Children's Advocacy Center (CAC). She interviewed J.L on January 22, 2019. A DVD of the recorded interview was admitted into evidence and played for the jury. In the interview, Salinas-Ramirez asked J.L. if anyone ever touched her on the part of her body used for peeing or her butt. J.L. replied, "Both of them." J.L. stated that the defendant had touched her there. Salinas-Ramirez asked what he touched her there with, and J.L. replied, "My bottom." Salinas-Ramirez then asked, "Your bottom? But what did he touch you there with?" J.L. replied, "His pee-pee area." J.L. indicated that the defendant's "pee-pee area" went "up and down" when he touched her there. J.L. said that she did not see his private and that it felt "hurtful" when he put his private on her private.

¶ 13    J.L indicated that the defendant always pulled her panties down when he touched her in her private area. Salinas-Ramirez asked about the defendant's clothes and J.L. replied that his clothes were "like off." Salinas-Ramirez then specifically asked four different times whether the defendant was wearing underwear. After being asked that question the first three times, J.L. stated

that the defendant was wearing underwear. When asked a fourth time, J.L. indicated that the defendant's underwear was off.

¶ 14     J.L stated that the defendant touched her in her brother's room. She had gone to her brother's room because the defendant had told her to. Her parents were downstairs when it happened. The defendant told her "don't tell nobody."

¶ 15     Toward the end of the interview, Salinas-Ramizez again asked J.L. to tell her everything about the last time the defendant touched her. J.L. replied by saying that, when she first told the doctor, her mother started crying. J.L. told the doctor that the defendant "was putting his private on [her] private." She did not tell the doctor anything else.

¶ 16     Dr. Raymond Davis, a pediatrician, was accepted without objection as an expert in the field of pediatrics and pediatric child abuse. He testified that sometimes children are comfortable enough to talk during a physical exam and sometimes they are not. The age of the child plays a role in whether a child feels comfortable. Studies showed that over half of children ages three to six years old do not discuss abuse during the exam even when there is clear evidence of sexual contact, such as a sexually transmitted disease. Young children could take two or three years to disclose any abuse.

¶ 17     Dr. Davis testified that he had experience with children as young as five years old changing their disclosures. He explained that children might change their disclosures due to pressure from family or guilt, feeling that it was their fault. Children may "test the waters" with some information and then proceed with more information only if the parents appeared to be supportive. He explained that this behavior, rather than indicating that the children were being coached to say more, was now understood as "just the way children go about this. He stated that children would

reveal more information as they realize that they did not do anything wrong and gain more confidence.

¶ 18    Dr. Davis testified that he examined J.L. three weeks after her disclosure of abuse. His examination did not reveal any signs of abuse. He explained that a normal examination could never rule out sexual abuse, especially if the abuse was in the form of fondling or touching.

¶ 19    At the close of the State's case, the defendant filed a motion for a directed verdict. The trial court dismissed counts III and IV of the indictment, finding that the State had failed to prove that the defendant had touched J.L.'s vagina with his penis on more than one occasion.

¶ 20    The defendant then testified on his own behalf. He denied all the allegations of assault.

¶ 21    Following the defendant's testimony, joint stipulations were read to the jury. The parties stipulated that on September 25, 2020, J.L. told Assistant State's Attorney Tyler Cox and CAC investigator David Smith that no one had touched her on a private part. On September 28, 2020, J.L. again met with Cox and Smith. During that meeting, she (1) pointed to her buttocks when asked what part of the defendant touched her body, (2) pointed to her buttocks when asked what part of her own body touched the defendant, (3) said she was lying on her stomach on the bed and that the defendant was lying on his back on top of her, (4) said that the defendant was lying on top of her and not moving, (5) said that the defendant was wearing a shirt and pants and never took them off, (6) said that she was wearing a long sleeve shirt and pants that never came off and she had her panties on, and (7) said that the defendant never touched her or did anything else.

¶ 22    At the close of the trial, the jury found the defendant guilty of two counts of predatory criminal sexual assault of a child.

¶ 23    The defendant thereafter filed a motion for a new trial. The defendant argued that the State failed to disclose prior to trial that Dr. Davis would provide opinions as to why there are delayed

reports in child sexual abuse cases, why children are reluctant to talk about sexual abuse, and why children make inconsistent statements about sexual abuse. Because the State failed to disclose this information, trial counsel did not have the opportunity to retain an expert to review and prepare a response.

¶ 24    Following a hearing, the trial court denied the defendant's motion for a new trial. The trial court found that the State's failure to disclose that it would seek Dr. Davis's testimony regarding children's disclosures of sexual abuse constituted a discovery violation. The trial court further found, however, that, although the evidence in the case was close, Dr. Davis's testimony was "not that strong" and would not have made a difference in the verdict. The trial court also determined that the State's failure to disclose was not willful and that it was not likely that earlier notice to the defense would have helped discredit Dr. Davis's testimony. The trial court expounded that the lack of an objection by trial counsel at the time of Dr. Davis's testimony "weighed heavily" in its decision.

¶ 25    On March 9, 2022, the trial court sentenced the defendant to consecutive seven-year prison terms on each count. The defendant thereafter filed a timely notice of appeal.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, the defendant raises four arguments: (1) he was not proven guilty beyond a reasonable doubt, (2) he was deprived of the effective assistance of counsel, (3) one of his convictions should be vacated under one-act, one-crime principles, and (4) his sentences violate the Illinois Constitution's proportionate penalties clause.

¶ 28                          A. Sufficiency of the Evidence

¶ 29    The defendant's first contention is that he was not proven guilty beyond a reasonable doubt of predatory criminal sexual assault. As to count II, he alleges that the State failed to prove that his

penis touched J.L.'s vagina. As to count V, he argues that the State failed to prove that there was any skin-to-skin contact between his penis and J.L.'s buttocks. Thus, he asserts, his conviction on count V must be reduced to aggravated criminal sexual abuse. See 720 ILCS 5/11-1.60(c)(1) (West 2018).

¶ 30     It is not the province of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Sauls*, 2022 IL 127732, ¶ 52. We will not reverse a conviction "unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 31     Section 11-1.40(a)(1) of the Criminal Code of 2012 provides:

> "(a) A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:
>
> (1) the victim is under 13 years of age[.]" 720 ILCS 5/11-1.40(a)(1) (West 2018).

¶ 32     Although "contact" is not defined in the statute, courts have construed that word to mean "any touching." *People v. Kitch*, 2019 IL App (3d) 170522, ¶ 51.

¶ 33     Count II of the indictment alleged contact between the defendant's penis and J.L.'s vagina. The evidence presented at trial did not establish that. At trial, J.L. identified two parts of her "bottom": the part where she "pee[d]" and the part where she "poop[ed]." The part where she

"peed" was in the middle or front (not the bottom). She testified that no one touched her where she "peed."

¶ 34     The State did introduce earlier statements from J.L. that, when considered in isolation, suggested that the defendant's penis touched J.L.'s vagina. For example, Dr. Sarmiento-Gupana said that J.L. told her that the defendant "put his private part in her private part and moved up and down and up and down." On cross-examination, however, she testified that J.L.'s actual words were that the defendant "touched *** her private with his private." Dr. Sarmiento-Gupana acknowledged that she did not attempt to clarify what J.L. meant by the term "private."

¶ 35     From elsewhere in the record, we can determine that J.L. meant that the defendant's "private" was his penis. At trial, J.L. testified that the defendant's "private" was the part of a boy's body that he uses to "[p]ee." As to her private area, J.L. described the parts of her body that people were not supposed to touch as (1) her "bottom," a part she uses to go the bathroom, (2) "another part that you use the bathroom with" that is located "in the middle of the bottom," and (3) her chest. As J.L. described three parts of her body as her private area, we cannot infer that the part of the "private" area she described to Dr. Sarmiento-Gupana was her vagina.

¶ 36     In the recorded interview, J.L. told Salinas-Ramirez that the defendant touched her on her bottom and where she "peed." After that statement, Salinas-Ramirez asked what the defendant touched her with. J.L. responded, "My bottom." Salinas-Ramirez followed by asking what the defendant used to touch her bottom. J.L. responded by saying the defendant used "[h]is pee-pee area." These statements do not indicate that the defendant ever used his penis to touch J.L.'s vagina specifically.

¶ 37     As none of the evidence establishes that the defendant's penis touched J.L.'s vagina, we must reverse his conviction on count II.

¶ 38 We next turn to whether the evidence was sufficient to convict the defendant of count V, which alleged that the defendant's penis made contact with J.L.'s buttocks. During her testimony and her statement to Salinas-Ramirez, J.L. testified that defendant touched her bottom with his "pee-pee" area. The defendant acknowledges that this evidence was sufficient to convict him of aggravated criminal sexual abuse. However, he asserts that it was insufficient to convict him of predatory criminal sexual assault of a child because the evidence did not establish that he had skin-to-skin contact with J.L. In response, the State insists that, since contact has such a broad definition, any contact or touching—whether skin-to-skin or through clothing—can constitute predatory criminal sexual assault of a child.

¶ 39 One commits aggravated criminal sexual abuse if:

"(1) that person is 17 years of age or over and: (i) commits an act of sexual conduct with a victim who is under 13 years of age." 720 ILCS 5/11-1.60(c)(1) (West 2018). The term "sexual conduct" is defined in subsection (e) section 12-12 of the Criminal Code of 1961 (720 ILCS 5/12-12 (West 2000)). Subsection (e) provides:

" 'Sexual conduct' means any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 12-12(e).

¶ 40 Aggravated criminal sexual abuse and predatory criminal sexual assault of a child relate to the same subject matter.

" '[W]hen, as in this case, two statutes relate to the same subject matter, we presume that the legislature intended both statutes to be operative and harmonious, and we must construe them with reference to each other so as to give effect to all of the provisions of each statute.' *Let Forest Park Vote on Video Gaming v. Village of Forest Park Municipal Officers Electoral Board*, 2018 IL App (1st) 180391, ¶ 12 (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 218 (2008)). Additionally, this court reads statutes *** together to make legislation harmonious and sensical. *Kankakeeland Community Action Program, Inc. v. Department of Commerce & Community Affairs*, 197 Ill. App. 3d 1067, 1074 (1990) (when courts interpret these rules in conjunction with a statute, they should construe the rules 'together with the statute to make, if possible, an effective piece of legislation in harmony with common sense and sound reason' (internal quotation marks omitted))." *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 23.

¶ 41    Predatory criminal sexual assault, a Class X felony, is a more serious offense than aggravated criminal sexual abuse, a Class 2 felony. Aggravated criminal sexual abuse can occur through the clothing. 720 ILCS 5/12-12(e) (West 2000). Predatory criminal sexual assault of a child is silent as to this issue. 720 ILCS 5/11-1.40(a)(1) (West 2018). However, reading the two statutory provisions together, the inclusion of the phrase "through clothing" in the aggravated criminal sexual abuse statute and not in the predatory criminal sexual assault of a child statute implies that predatory criminal sexual assault of a child cannot be done through clothing. See *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 509-10 (2009) (discussing the statutory maxim of construction *inclusio unius est exclusio alterius*, meaning that the inclusion of one thing implies the exclusion of another).

¶ 42    This comports with logic (see *Beauchamp*, 2022 IL App (1st) 210091, ¶ 23) because improper sexual contact that occurs skin-to-skin or directly is more offensive than the same conduct done through clothing. As such, we believe that an element of predatory criminal sexual assault of a child is that there be skin-to-skin contact. Thus, the State was required to prove that this type of contact occurred.

¶ 43    At trial, J.L testified that she and the defendant had their clothes on when he touched her. Prior to trial, she talked to four people about the alleged abuse. She told two of the people, Cox and Smith, that she and the defendant had their clothes on. She did not mention to Dr. Sarmiento-Gupana, and Dr. Sarmiento-Gupana did not ask, whether she and the defendant were wearing clothes when the alleged abuse occurred. J.L. told Salinas-Ramirez that the defendant removed her panties during the alleged incident. Salinas-Ramirez specifically asked four different times whether the defendant was wearing underwear during the incident. After being asked that question the first three times, J.L stated that the defendant was wearing underwear. When asked a fourth time, J.L. indicated that the defendant's underwear was off.

¶ 44    The State argues that J.L.'s fourth statement to Salinas-Ramirez was sufficient to support the defendant's conviction of predatory criminal sexual assault. Relying on *People v. Gonzalez*, 2015 IL App (1st) 132452, the defendant argues that it was not. In *Gonzalez*, the Appellate Court, First District stated:

> "We are mindful that it was the trial court's duty to determine the credibility of the witnesses and that it is not our function to retry defendant on appeal. *Siguenza-Brito*, 235 Ill. 2d at 228. Nonetheless, it is well settled that testimony may be found insufficient where the evidence compels the conclusion that no reasonable person could accept that testimony beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Further,

'the fact a judge or jury did accept testimony does not guarantee it was reasonable to do so.' *Id.* While we usually defer to the trial judge's resolution of conflicting evidence where, as is the case here, the conflict is created by the same witness, we cannot defer and accept one definite statement of a witness about an important issue and completely ignore the exact opposite definitive statement on that same issue by the same witness. Thus, officer Hoyas'[s] testimony that he observed 'the defendants' throwing bricks, simply does not warrant our acceptance and deference when he unequivocally stated he did not see 'any defendant' throw any bricks. In light of the inconsistent and vague nature of Officer Hoyas'[s] testimony, including his conclusive statement on cross-examination that he did not see 'the defendants' throw any bricks, when combined with the remaining officer's testimony that he did not see the defendant throw any bricks, we find the testimony is so unsatisfactory that the State failed to prove the elements of reckless conduct beyond a reasonable doubt." *Id.* ¶ 23.

¶ 45    We acknowledge that the evidence of whether the defendant was wearing clothes when his penis allegedly touched J.L.'s buttocks was very close. On six occasions, J.L. stated that the defendant was wearing clothes, or at least underwear. However, on one occasion, she stated that he was not even wearing underwear. We note that, beyond J.L.'s statements, the jury also heard Dr. Davis's expert testimony that, in his experience, children change their statements due to family pressure or a sense of guilt. We further note that the inconsistencies in J.L.'s statements and testimony were brought to the jury's attention during closing arguments. It was within the jury's purview to determine that J.L was more credible on the one occasion when she said the defendant was not wearing clothes than on the multiple occasions when she said he was. See *People v. Campbell*, 146 Ill. 2d 363, 375 (1992) (it is the responsibility of the trier of fact to resolve conflicts

in the testimony, to weigh the evidence, and to draw reasonable inferences therefrom). As such, we have no basis to upset the jury's determination in this case, and we conclude that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. See *People v. Evans*, 122 Ill. App. 3d 733, 738 (1984) (jury's determination of witness credibility will not be set aside unless it is so unsatisfactory as to create a reasonable doubt of the defendant's guilt).

¶ 46     In so ruling, we are unpersuaded by the defendant's reliance on *Gonzalez*. There, a police officer gave inconsistent statements. There was no expert testimony provided that would explain why the officer would testify inconsistently as to what he had observed. See *Gonzalez*, 2015 IL App (1st) 132452, ¶ 23. Conversely, in the instant case, the jury was provided with Dr. Davis's expert testimony explaining why child victims of sexual abuse may give inconsistent statements.

¶ 47                    B. Ineffective Assistance of Counsel

¶ 48     The defendant's second contention is that he was deprived of the effective assistance of counsel. Specifically, he asserts that his trial counsel was ineffective for failing to object at trial to the discovery violation of undisclosed testimony from Dr. Davis regarding the psychology behind children's delayed, reluctant, and inconsistent disclosures of sexual abuse. The defendant argues that, had trial counsel objected, there is a reasonable probability that the court would have granted a request for a continuance to allow trial counsel to seek her own expert witness, would have stricken the testimony, or even would have granted a mistrial. The defendant insists that Dr. Davis's expert testimony prejudiced him because it was the "only evidence that allowed the jury to explain away any perceived inconsistencies in J.L.'s *** stories."

¶ 49     To show ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was so deficient it "fell below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S.

668, 687-688 (1984). To demonstrate prejudice, a defendant need not prove that the outcome would be different, only that a different outcome would be reasonably probable. *Id.* at 694. A "reasonable probability" may exist even where the chance of acquittal is significantly less than 50%. *People v. McCarter*, 385 Ill. App. 3d 919, 935 (2008).

¶ 50　　Whether trial counsel provided ineffective assistance is a mixed question of fact and law. See *Strickland*, 466 U.S. at 697-98. A reviewing court defers to the trial court's findings of fact, but it reviews the trial court's ultimate determination *de novo*. *People v. Crane*, 195 Ill. 2d 42, 51-52 (2001).

¶ 51　　When a trial error occurs, counsel must object to the error at trial and raise the issue in a posttrial motion in order to preserve the issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). As to discovery violations, trial counsel should request a continuance upon learning of the State's discovery violation to attempt to diminish the defendant's surprise and prejudice. *People v. Heard*, 187 Ill. 2d 36, 63 (1999).

¶ 52　　Here, the State did not disclose that Dr. Davis would be providing expert testimony on matters of child psychology. The trial court found the State's failure to disclose that Dr. Davis would be testifying as an expert to be a discovery violation. Trial counsel explained that she did not object at trial because the State's line of questioning surprised her. Failing to object due to "surprise" is not a reasonable trial strategy. As such, trial counsel's representation fell below an objective standard of reasonableness.

¶ 53　　We next consider whether trial counsel's representation of the defendant prejudiced him. In evaluating prejudice as to whether a discovery violation warrants a new trial for a criminal defendant, a reviewing court considers "the closeness of the evidence, the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the

evidence, and the willfulness of the State in failing to disclose the new evidence." *People v. Robinson*, 157 Ill. 2d 68, 81 (1993). The burden of showing prejudice is on the defendant, and the failure to request a continuance is a relevant factor in determining whether the testimony at issue actually surprised or unduly prejudiced the defendant. *Id.* at 78.

¶ 54    Based on a consideration of the *Robinson* factors, we conclude that the State's failure to disclose that Dr. Davis would be providing expert opinions prejudiced the defendant. As the trial court correctly noted, the evidence in this case was close. It ultimately came down to which version of J.L.'s statements and sworn testimony the jury believed. Did the jury believe her initial statements to Dr. Sarmiento-Gupana and Salinas-Ramirez that she was abused? Or did it believe her later statements to Cox and Smith that on one occasion when she was on her stomach and fully clothed, the defendant, while fully clothed, laid on his back on top of her? How did the jury reconcile the above statements with J.L.'s additional statement to Cox and Smith that the defendant never touched her or did anything else? Further, how did it reconcile the above statements with her trial testimony that on one occasion the defendant touched her bottom with his penis while they were both fully clothed and that he did not touch her on any other occasion?

¶ 55    Dr. Davis's expert testimony that child victims tend to change their story due to family pressure was therefore incredibly significant. His testimony essentially suggested that the jury should believe J.L.'s initial claims of abuse, not her later denials of abuse. Indeed, the State made this very assertion in closing arguments when it pointed to Dr. Davis's opinions as explanations for why children are "reluctant to come in and testify and why they may not want to talk about everything that happens to them."

¶ 56    Trial counsel indicated at the posttrial hearing that, had the State properly disclosed the expert opinions that Dr. Davis would be providing, she would have sought her own expert and

would have attempted to discredit Dr. Davis's testimony. Moreover, had trial counsel timely objected, she could have requested a continuance in order to better prepare her cross-examination of Dr. Davis and to better prepare her closing argument to respond to Dr. Davis's testimony. The trial court's comments suggest that it would have granted counsel's request for a continuance had one been requested.

¶ 57 In terms of whether the State's discovery violation was willful, the State acknowledged at the hearing on the posttrial motion that it anticipated asking Dr. Davis questions at trial about the psychology behind delayed, reluctant, and inconsistent sexual abuse disclosures of children but failed to provide that information to the defense.

¶ 58 We note that the State argues that the *Robinson* factors weigh in its favor. Specifically, it asserts that Dr. Davis's testimony was not that significant because issues regarding child disclosures in sex offenses are not novel areas of law or psychology. See *People v. Atherton*, 406 Ill. App. 3d 598, 612-18 (2010). The State further asserts that the defendant has not affirmatively demonstrated how a continuance would have resulted in evidence or questions to counter Dr. Davis's testimony. The State also correctly points out that speculating that an expert could be found or what an unidentified expert would say is insufficient to establish prejudice. See *People v. Johnson*, 2021 IL 126291, ¶ 58. The State also insists that it never conceded that its discovery violation was willful.

¶ 59 Based on a consideration of all the *Robinson* factors, we believe that trial counsel's deficient performance prejudiced the defendant and so deprived him of the effective assistance of counsel. The most important factors are the closeness of the evidence (see *People v. Hood*, 229 Ill. App. 3d 202, 216 (1992) (the closer the evidence, the stronger is the case for declaring a mistrial)) and the significance of Dr. Davis's testimony. We are unpersuaded by the State's attempts to

minimize that testimony. Rather, his testimony was crucial, as it provided a basis for the jury to reconcile J.L.'s inconsistent statements in favor of conviction.

¶ 60     Accordingly, we vacate the defendant's remaining conviction and remand for a new trial. As we have already determined that the evidence was sufficient to convict the defendant of predatory criminal sexual assault, he will not be subject to double jeopardy on remand. See *People v. McKown*, 236 Ill. 2d 278, 311 (2010) ("If the evidence presented at the first trial, including the improperly admitted evidence, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy.").

¶ 61                                   C. Remaining Issues

¶ 62     The defendant's third contention is that one of his convictions of predatory criminal sexual assault of a child must be vacated under one-act, one-crime principles. As we have already vacated one of his convictions, this argument is moot.

¶ 63     The defendant's final contention is that his sentence violates the Illinois Constitution's proportionate penalties clause. Specifically, he contends that predatory criminal sexual assault of a child and aggravated criminal sexual abuse have identical elements but disparate sentences.

¶ 64     Given the fact that we have held that the defendant is entitled to a new trial, we need not address his sentencing issue. However, when appropriate, a reviewing court may address issues that are likely to recur on remand, in order to provide guidance to the lower court. *Cf. People v. Johnson*, 2013 IL App (2d) 110535, ¶ 60 (addressing issue likely to arise at trial on remand).

¶ 65     The defendant's argument is without merit. As discussed earlier, predatory criminal sexual assault of a child and aggravated criminal sexual abuse do not have identical elements. Predatory criminal sexual assault of a child requires there to be skin-to-skin contact while aggravated criminal sexual abuse does not. Thus, as predatory criminal sexual assault of a child includes an

additional element, there is no violation of the constitution's proportionate penalties clause. See *People v. Clemons*, 2012 IL 107821, ¶ 24 (if the elements of the two offenses are not the same, a proportionate penalties challenge could not succeed under the identical elements test).

¶ 66                                    III. CONCLUSION

¶ 67    For the reasons stated, we reverse the defendant's conviction on count II. We vacate the defendant's conviction on count V and remand for further proceedings as to count V.

¶ 68    Reversed in part and vacated in part.

¶ 69    Cause remanded.

*People v. Currie*, **2023 IL App (2d) 220114**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 19-CF-336; the Hon. Alice C. Tracy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Lucas Walker, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |