2025 IL App (2d) 240308-U
No. 2-24-0308
Order filed August 8, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1724 |
| JUAN M. M., | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   There was insufficient evidence to support the trial court's judgment finding defendant "not not guilty" of one count of predatory criminal sexual assault of a child and two alternative counts of aggravated criminal sexual abuse where the trial court's finding was based on the mistaken belief that the victim testified to skin on skin contact whereas the record reflects that the victim testified that she did not know where defendant touched her. Reversed as modified

¶ 2   Defendant, Juan M. M., was charged with three counts of predatory criminal sexual assault of a child (PCSAC) (720 ILCS 5/11-1.40(a)(1) (West 2022)) and eight counts of aggravated criminal sexual abuse (*id.* § 5/11-1.60(b), (f)). Defendant was found unfit to stand trial and, following a discharge hearing, was found "not not guilty" of two counts of PCSAC and four counts

of aggravated criminal sexual abuse. On appeal, defendant challenges the sufficiency of the evidence to support the not not guilty finding on one of the PCSAC counts and two of the counts of aggravated criminal sexual abuse. He also seeks correction of an error in the written order entered following the discharge hearing. We reverse the trial court's finding of not not guilty as to the living room incident and modify the judgment to correct the errors in the written order.

¶ 3                                    I. BACKGROUND

¶ 4      On October 18, 2022, a Kane County grand jury returned an 11-count indictment charging defendant with sex offenses committed against his granddaughter, A.M. None of the counts alleged that the offense occurred on a particular date. Rather, each count alleged that the offense occurred "on or about May 1, 2022 through September 7, 2022." Nine of the eleven counts consisted of three sets of three identically worded charges.

¶ 5      Counts 1, 2, and 3 charged defendant with PCSAC (720 ILCS 5/11-1.40(a)(1) (West 2022)), alleging that

> "defendant, a person 17 years of age or over, knowingly committed an act of contact, however slight, with A.M., a child who was under 13 years of age when the act was committed, in that *** defendant touched the sex organ of A.M. with his hand for the purpose of sexual arousal or gratification of *** defendant or the victim."

¶ 6      Counts 4, 5, and 6 charged defendant with aggravated criminal sexual abuse (*id.* § 5/11-1.60(f)), alleging that

> "defendant committed an act of sexual conduct with A.M., a victim who is but [*sic*] under 18 years of age when the act was committed, in that *** defendant touched A.M.'s sex organ with his hand for the purpose of sexual gratification or arousal of ***defendant or

A.M., and *** defendant was 17 years of age or over and held a position of trust, authority, or supervision in relation to A.M."

¶ 7    Counts 8, 9, and 10 charged defendant with aggravated criminal sexual abuse (*id.* § 11-1.60(b)), alleging that

"defendant, a family member of A.M., committed an act of sexual conduct with A.M., a person under 18 years of age when the act was committed, in that *** defendant touched A.M.'s sex organ with his hand for the purpose of sexual gratification or arousal of *** defendant or A.M."

¶ 8    The remaining counts of the indictment (counts 7 and 11) also charged defendant with aggravated criminal sexual abuse. Count 7 was identical to Counts 4, 5, and 6, and count 11 was identical to counts 8, 9, and 10, except that counts 7 and 11 alleged that defendant touched A.M.'s buttocks, not her sex organ.

¶ 9    At defendant's arraignment, the prosecutor advised the court that Counts 1, 2, and 3 of the indictment charged separate acts, and were "all consecutive to each other." Two other groups of charges—Counts 4, 5, and 6 (charging aggravated criminal sexual abuse), and Counts 8, 9, and 10 (also charging aggravated criminal sexual abuse) were "alternative charges of [Counts] 1 to 3." The prosecutor further advised the court that Counts 7 and 11 (both of which charged aggravated criminal sexual abuse) were "alternative counts to each other[,]" but "[c]onsecutive to 1, 2, and 3." Thus, the 11 counts, in various groupings were based on 4 separate incidents with no allegations differentiating the times or locations of the incidents.

¶ 10    During the pretrial proceedings, defendant's attorney advised the trial court that he had a *bona fide* doubt as to defendant's fitness to stand trial. The court ordered a fitness evaluation. A fitness hearing was held at which a licensed clinical psychologist who evaluated defendant testified

that she diagnosed defendant (who was 84 years old) with an unspecified neurocognitive disorder that manifested as impairment in memory and executive functioning. These symptoms were consistent with a diagnosis of dementia. She concluded that defendant was unable to understand the nature and purpose of the court proceedings or to assist with his defense. In her opinion, defendant could not attain fitness within one year.

¶ 11    The trial court entered an order finding defendant unfit to stand trial. The court was unable to determine whether a substantial probability existed that defendant could attain fitness. Therefore, the court remanded defendant to the custody of the Department of Human Services (Department) to determine if he could attain fitness. Ultimately, the court found defendant unlikely to attain fitness to stand trial within one year. Accordingly, under section 104-23(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-23(a) (West 2022)), the court continued the matter for a discharge hearing under section 104-25 of the Code (*id.* § 104-25).

¶ 12    At the discharge hearing, Amanda Glaesmer, a child protection investigator, testified that she interviewed A.M. at the Kane County Child Advocacy Center (CAC) on September 13, 2022. A video recording of the interview was admitted as outcry evidence (see 725 ILCS 5/115-10 (West 2022))[1] and played during the hearing. During the interview, Glaesmer gave A.M. an anatomical drawing of a female and asked her to circle the private parts on the drawing. A.M. circled the pubic region, which she said was used to "pee." Glaesmer wrote "to pee" next to the circle. A.M. also circled the buttocks, which she referred to as the "bum." Glaesmer wrote "bum" next to that circle.

---

[1]The State was also permitted to introduce, as other crimes evidence, A.M.'s statements about offenses defendant committed against her at his Cook County residence. See 725 ILCS 5/115-7.3 (West 2022).

A.M. told Glaesmer that defendant had touched her private parts—both her pubic region and her buttocks—while they were in a guest bedroom in the basement of her home. He did this more than "one time." Sometimes, defendant would put his finger inside the side of A.M.'s shorts. Later in the interview, A.M. specifically recalled an occasion when defendant touched her pubic region under her underwear while she was wearing shorts. Defendant moved his hand while touching her. A.M. then said that this manner of touching happened more than "one time" in the basement bedroom. A.M. also said that defendant touched her once in her own room, but she did not give details. She later said that defendant did not touch her pubic region in any room in the house other than the basement bedroom.

¶ 13    A.M. testified that she was born on April 30, 2012. When she was younger and living with her family in South Elgin, defendant would visit and stay in a bedroom in the basement of their home. A.M. testified that defendant touched her "private parts" with his hand while they were in the basement bedroom. A.M. was wearing clothes at the time. A.M. testified that this occurred more than once. On further questioning, A.M. clarified that the part defendant touched was the part she used to "pee." She was then asked, "[W]hen [defendant] touched you on the part that is used to pee, did he touch your skin with his hand?" She said yes. She also said it happened more than once. During these instances, she was wearing shorts and a shirt. Sometimes, her "pants [were] off"—he or she removed them.

¶ 14    A.M. recalled that defendant first touched her in the living room in the South Elgin house. Asked where defendant touched her on her body, A.M. first indicated that she did not know, but she then stated that she did not want to talk about it. Nonetheless, when asked further, she stated that, "when [defendant] touched [her] in the living room," both of them were clothed. She said nothing else about how defendant touched her in the living room. When asked about other

instances, she said that, on one occasion when defendant and A.M. were in her bedroom, defendant touched the part she used to "pee." She did not describe this touching further.

¶ 15    Another investigator with the CAC, David Smith, interviewed defendant on September 14, 2022. A video recording of the interview was admitted into evidence and played during the hearing. Defendant initially denied touching A.M. Later, he stated that, while he and A.M. were playing, he touched her by mistake. He explained that his hand went up under A.M.'s shorts. This occurred in the basement bedroom of A.M.'s home. He claimed that he apologized, but A.M. repeatedly asked him to do it again. He initially refused, but he ultimately placed his hand under her shorts and underwear and touched her vagina while moving his finger. Defendant stated that he touched A.M.'s vagina two or three times while they were in the basement bedroom, but he never did so anywhere else in the house. The first time he touched A.M. was a couple of months before the interview, and the last time was about three or four weeks before the interview.

¶ 16    The trial court found that the State proved two instances of contact between defendant's hand and A.M.'s sex organ. The court found that one instance occurred in the living room. In explaining that finding, the court incorrectly stated that A.M. testified that while they were in the living room defendant "touched her on her skin through her shorts as was described before." The court also incorrectly stated that that incident was corroborated by defendant "when he was being interviewed." In fact, when asked where on her body defendant touched her when they were in the living room, she responded that she did not know. During his interview, defendant denied touching A.M. inappropriately anywhere in the house other than the basement bedroom.

¶ 17    The trial court also found, "The second event occurred in the bedroom. He touched the private part ***. He went into where she pees. Again, it was under her clothes, up shorts, as described by the defendant when he gave his statement." However, the trial court found the

evidence insufficient to prove that defendant committed any other acts of contact with A.M.'s sex organ. The court explained:

> "The testimony that [*sic*] happened on more than one occasion is not sufficient proof beyond a reasonable doubt that something happened on multiple occasions. Likewise, specific dates and times are also not required, but there must be some testimony to indicate that separate distinct acts occurred."

¶ 18    The court's disposition of the various counts of the indictment is perplexing. Initially, the trial court stated that it found defendant not not guilty of counts 1, 2, 4, 6, 8, and 9 of the indictment, and acquitted him of counts 3, 6, 7, 8, 10, and 11. The prosecutor pointed out that the court had found defendant both not not guilty and acquitted him of count 8. The court responded that defendant was not not guilty of count 8 and was acquitted of counts 3, 6, 7, 10, and 11. The court's entered a written order finding defendant not not guilty of counts 1, 2, 4, 6, 8, and 9, and acquitting him of counts 3, 6, 7, 10, and 11. Notably, the trial court failed to dispose of count 5, and its written order both acquitted defendant of count 6 and found him not not guilty of the same count. The court ordered defendant remanded to the Department's custody and this appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    When a criminal defendant is found unfit to stand trial, the court shall order treatment for the defendant unless it determines that there is not a substantial probability that the defendant will attain fitness within one year if provided with treatment. 725 ILCS 5/104-16(d) (West 2022). If the defendant is found unfit due to a mental disability, the court may order the defendant placed for secure treatment in the Department's custody. *Id.* § 104-17(b).

¶ 21    Section 104-23(a) of the Code (*id.* § 104-23(a)) provides:

"Upon a determination that there is not a substantial probability that the defendant will attain fitness within the time period set in subsection (e) of Section 104-17 of this Code [725 ILCS 5/104-17(e) (West 2022)] from the original finding of unfitness, the court shall hold a discharge hearing within 60 days, unless good cause is shown for the delay."

For those charged with felonies, the applicable period under section 104-17(e) of the Code is one year. *Id.* § 104-17(e).

¶ 22    Section 104-25(a) of the Code (*id.* § 104-25(a)) provides for the discharge hearing to be conducted by the court without a jury, to determine the sufficiency of the evidence of the offenses the unfit defendant is charged with. Under section 104-25(b) (*id.* § 104-25(b)), "[i]f the evidence does not prove the defendant guilty beyond a reasonable doubt, the court shall enter a judgment of acquittal." However, if the defendant is not acquitted—*i.e.*, if the trial court finds the evidence sufficient to prove the defendant's guilt beyond a reasonable doubt—it may remand the defendant to the Department for further treatment. Where the most serious charge against the defendant is a Class 1 or Class X felony, the treatment period may be extended by up to two years. *Id.* § 104-25(d)(1).

¶ 23    At a discharge hearing, a determination that the evidence is sufficient is not a conviction; rather, it is commonly referred to as a "*not* not guilty" finding. (Emphasis in original.) *People v. Waid*, 221 Ill. 2d 464, 470 (2006). The standard of proof is the same as that required for a criminal conviction, the state must prove defendant's guilt beyond a reasonable doubt. *People v. Williams*, 312 Ill. App. 3d 232, 234 (2000). Therefore, the standard of review is as follows:

"When presented with a challenge to the sufficiency of the evidence, it is not the function of [the reviewing] court to retry the defendant. [Rather,] 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319).

¶ 24 Here, the trial court found defendant not not guilty of two counts of PCSAC, one which was ostensibly based on evidence of an incident that occurred in the living room of A.M.'s home and the other based on an incident that occurred in the basement bedroom. However, the trial court acquitted defendant of the third count of PCSAC, reasoning that A.M.'s testimony that defendant touched her "private parts" more than "one time" in the basement bedroom was not sufficient to sustain proof of a third offense. Defendant argues that the evidence about the living room incident was insufficient to sustain the not not guilty finding and that he should have been acquitted of that offense as well. According to defendant, the not not guilty finding was based on the court's confusion about the evidence relating to that incident. Moreover, because the trial court's not not guilty findings on two of the counts of aggravated criminal sexual abuse necessarily rest on the same evidence, defendant argues that he should have been acquitted of those as well.

¶ 25 As pertinent here, section 11-1.40(a) of the Criminal Code of 1961 (720 ILCS 5/11-1.40(a) (West 2020)) provides:

> "(a) A person commits [PCSAC] if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:
>
> (1) the victim is under 13 years of age."

We have held that PCSAC "cannot be done through clothing." *People v. Currie*, 2023 IL App (2d) 220114, ¶ 41. "[A]n element of [PCSAC] is that there be skin-to-skin contact." *Id.* ¶ 42.

¶ 26    A.M. reluctantly testified about an incident in which defendant touched her while they were in the living room of her family home. She testified that they were both clothed. She did not testify that defendant touched her under her clothes or otherwise had contact with her skin. In finding defendant not not guilty on the count that allegedly occurred in the living room, the trial court incorrectly stated that defendant "touched [A.M.] on her skin through her shorts." However, A.M. testified that she did not know where on her body defendant touched her when they were in the living room. The State presented no other evidence regarding what occurred in the living room.

¶ 27    The State initially responded that, even if the evidence was insufficient to sustain a finding of not not guilty based on the living room incident, there was still sufficient evidence to sustain not not guilty findings on two counts of PCSAC. According to the State, there was evidence that defendant committed PCSAC more than once in the basement bedroom of A.M.'s house. The State observes: "In the CAC interview, A.M. said defendant touched her 'more than one time' in the basement bedroom and that he touched her under her underwear in the place she used 'to pee.' " The State explains that "specific times or dates and the location where a sexual assault occurred are not elements of [PCSAC]." The State adds that "[w]hat a sexual abuse victim must describe is the kind of act or acts, the number of acts to support each count, and the general time period in which they occurred."

¶ 28    Arguably, the evidence of multiple incidents in the basement bedroom would have been sufficient to support a finding of not not guilty of two counts of PCSAC *if the trial court had made such a finding*. However, the trial court did not. Had the trial court made such a finding, it would not have acquitted defendant of the third count of PCSAC. As noted, at defendant's arraignment, the State indicated that the 11 charges were based on four separate incidents. At the discharge hearing, the State attempted to prove that defendant engaged in some form of sexual misconduct

with A.M. in the living room, in the basement bedroom, and in A.M.'s bedroom. However, the evidence was clearly insufficient for a not not guilty finding with respect to conduct occurring anywhere other than the basement bedroom. The court found defendant not not guilty of one count of PCSAC based on an incident that occurred in "the bedroom" (the court did not specify which bedroom) but found the evidence insufficient to prove beyond a reasonable doubt that more than one such incident in the bedroom occurred.

¶ 29    By arguing that the evidence was sufficient to sustain a not not guilty finding on another count of PCSAC based on conduct in the basement bedroom, the State asks us to review a judgment of acquittal. No matter how misguided the trial court's ruling may have been, we have no authority to disturb it. As the United States Supreme Court has explained, "[t]he Government 'cannot secure appellate review' of an acquittal, [citation] even one 'based upon an egregiously erroneous foundation[.]' " *Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016) (quoting *Arizona v. Washington*, 434 U.S. 497, 503 (1978)).

¶ 30    Thus, we may review only the sufficiency of the evidence to sustain the two not not guilty findings the trial court actually made. One was based on evidence of sexual contact that occurred in a bedroom in A.M.'s family's home. The other was based on sexual contact that occurred in the home's living room. The evidence of the latter was insufficient. Although the State contends that the evidence was sufficient for the trial court to find defendant not not guilty based on the living room incident, it points to no evidence of the necessary element of contact, meaning skin-to-skin contact. See *Currie*, 2023 IL App (2d) 220114, ¶ 41. Accordingly, we agree with defendant that one of the two findings of not not guilty of PCSAC must be modified to a judgment of acquittal. Likewise, the findings of not not guilty of two counts of aggravated criminal sexual abuse (one count based on defendant's status as a family member of A.M., and one count based on defendant

holding a position of trust, authority, or supervision in relation to A.M.) were necessarily based on the trial court's misapprehension of the evidence regarding the living room incident. Those findings must be reversed.

¶ 31   Defendant next argues that the April 8, 2024, order should be corrected. That order indicates that defendant was both acquitted and not acquitted of count 6. We agree with defendant that, the April 8, 2024, order must be corrected to conform to the court's oral finding acquitting defendant of count 6.

¶ 32   Rather than remanding to the trial court to correct the judgment, for the sake of efficiency we choose to exercise our power under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967) to modify the judgment to conform to our decision. The judgment is modified to reflect a finding of not not guilty on counts 1, 4, and 8 and of acquittal on counts 2, 3, 5, 6, 7, 10 and 11.

¶ 33                    III. CONCLUSION

¶ 34   For the reasons stated, we reverse the judgment of the circuit court of Kane County as modified.

¶ 35   Reversed as modified.